## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| LESLIE KEAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 03-2509 (EGS) |
| v. ) | |
| ) | |
| NATIONAL AERONAUTICS AND ) | |
| SPACE ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM OPINION

Plaintiff Leslie Kean brings this suit against the National Aeronautics and Space Administration ("NASA") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  Plaintiff seeks the production of documents responsive to a January 31, 2003 request for documents related to an incident in Kecksburg, Pennsylvania, on December 9, 1965.  Plaintiff contends, and indeed NASA admits, that NASA's first two searches for responsive documents were inadequate.  Nevertheless, NASA maintains that its third search, undertaken on December 2, 2003, and now its fourth search, undertaken in July 2006, were exhaustive and satisfied NASA's burden under FOIA.  Pending before the Court are defendant's renewed motion for summary judgment and plaintiff's cross-motion for summary judgment.  Upon consideration of the motions, the responses and replies thereto, the arguments made at

1

the hearing on March 20, 2007, the applicable law, and the entire
record, the Court determines that defendant has not yet met its
burden of demonstrating that the search for documents was
adequate.  Therefore, for the reasons stated herein, defendant's
motion for summary judgment is **GRANTED in part and DENIED in part
without prejudice**, and plaintiff's cross-motion for summary
judgment is **DENIED without prejudice**.

**BACKGROUND**

**I. NASA's FOIA Searches**

This action arises from plaintiff's request for historical
documents concerning an object that allegedly fell from the sky
and crashed in Kecksburg, Pennsylvania in 1965.  On January 31,
2003, plaintiff submitted a FOIA request to NASA seeking
documents related or referring to Kecksburg, the December 9, 1965
incident, the "Fragology Files" for 1962 to 1967, Richard M.
Schulherr, Project Moon Dust, and "Cosmos 96." NASA has conducted
four searches pursuant to this FOIA request, which plaintiff
argues have been insufficient.

**A. First Search**

NASA's first search was initiated by NASA FOIA specialist
Kellie Robinson.  Robinson conducted a "key word" search in the
NASA database, reviewed several previous FOIA requests for
similar information, considered that the documents requested were

2

from the 1960s, and based on these factors concluded that the History Office should search for responsive documents.  1st Decl. of Kellie Robinson, Def.'s Mot. for Summ. J., Attach. 2, ¶ 3.

Jane Odom, a NASA archivist in the History Office, searched that office's database, locating only one item.  Decl. of Jane Odom, Def.'s Mot. for Summ. J., Attach. 3.  Odom reviewed the folder identified in the database, finding published accounts of Cosmos 96 but no internal NASA documents.  According to Odom's declaration, she then consulted with another archivist in the office who suggested she search the UFO files.  That search, too, produced no documents responsive to plaintiff's request.  Thus, Odom sent a "no records" response to the FOIA Office, recommending that the request be sent to the Goddard Space Flight Center.  However, for reasons that are not clear, the request was not sent to the Goddard Space Flight Center, and plaintiff was simply sent a "no records" response dated April 11, 2003.

**B. Second Search**

On May 9, 2003, plaintiff sent a letter appealing the "no records" response.  Plaintiff's letter also requested, for the first time, documents in six new categories, including information pertaining to the processing of her initial FOIA request, other FOIA requests, and policies on retention of documents pursuant to FOIA requests.  With her letter, plaintiff submitted three NASA documents relevant to her initial document

request in order to facilitate document retrieval.  In August 2003, plaintiff also sent NASA a specific list of accessions (record indexes) that referred to potentially relevant records at the National Archives.

Plaintiff's appeal was granted by letter dated June 18, 2003.  In that letter, signed by Associate Deputy Administrator James Jennings, NASA informed plaintiff that it would conduct a new search that would include all the NASA Centers and that documents from earlier, similar FOIA requests had been located and would be released to her.  Specifically, the letter stated that NASA would look for the missing fragology files that plaintiff had requested, that the new search would include the six additional categories from plaintiff's letter of appeal, and that all of this would be done on an expedited basis.  1st Decl. of Margaret Roberts, Def.'s Mot. for Summ. J., Attach. 5, at Ex. 2 ("Jennings letter").

NASA, however, initially failed to properly act on the Jennings letter.  That failure appears to be a result of poor tracking and the relocation of NASA's FOIA Office in August 2003.  Not having heard from NASA after she received the Jennings letter, plaintiff informed the agency by letter dated October 15, 2003, that she intended to sue.

NASA's new FOIA Officer, Stephen McConnell, received a copy of plaintiff's October letter and initiated what the parties

refer to as the second search.  After speaking with Robinson, McConnell noted that there were responsive documents that had not been released to plaintiff, and he sent those documents to plaintiff with a letter dated October 21, 2003.  This response did not comply with the directives in the Jennings letter, however, as it failed to cover most, if not all, of the search categories listed in the letter.

### C. Third Search

Because McConnell's letter stated that it was an "initial determination," plaintiff filed an appeal by letter dated November 14, 2003.  Apparently, this second appeal came to the attention of Margaret Roberts, Senior Attorney in the General Counsel's office.  On December 2, 2003, Roberts sent instructions to the FOIA Office to be forwarded to all the NASA Centers, directing them to perform a new, third search in compliance with the Jennings letter by January 5, 2004.  1st Roberts Decl. ¶ 9. In order to specify the parameters of this new search, Roberts did not articulate particular search terms or topics, but instead included copies of the Jennings letter and plaintiff's previous requests and correspondence in order to guide the search.

 Much of the dispute in this case centers around the adequacy and documentation of this third search, which was conducted by multiple NASA offices.  With regard to the other NASA Centers, Roberts in her declaration provided email responses

from FOIA officers in each of the Centers.  Most of these letters simply assert that a "thorough" search was completed, and that "no records" responsive to plaintiff's request were found.  Only one of the ten letters, from the Jet Propulsion Laboratory, specified the particular databases that were searched, and the actual search terms used.

In response to plaintiff's opposition to these search descriptions, defendant submitted additional declarations from officials at several of the NASA Centers.  *See* Def.'s Supp. Mem., Attach. 6 (Glenn Research Center); Attach. 7 (Marshall Space Flight Center); Attach. 8 (Goddard Space Flight Center); Attach. 10 (Johnson Space Center); Attach. 11 (Dryden Research Center); Attach. 13 (Kennedy Space Flight Center).  These declarations provide addition information about which offices conducted searches, but most do not provide any detailed information about particular databases or records searched, or search terms used. Only the Marshall Space Flight Center provided a description of the actual databases searched and search terms used, though it lacks a description of what types of records the databases contain.  *See id.* Attach. 7.

Initially, plaintiff argued that defendant had provided no declarations describing the search efforts at NASA Headquarters during the third search.  Defendant, in response, submitted a supplemental declaration by Stephen McConnell describing those

efforts.  *See* 2d Decl. of Stephen McConnell, Def.'s Supp. Mem.,
Attach. 2.  As Margaret Roberts did, McConnell sent out
instructions to the various departments at NASA Headquarters
using his FOIA Office "Control Sheets."  Attached to his
declaration are responses by these departments.  Many of the
responses were single-line conclusory statements, such as: "A
search was conducted in Code U and no responsive records were
located."  *Id.* at 19 (email response from Marietta Anderson).
Based on these responses, McConnell would later declare that he
believes "they collectively represent that a reasonable search
was performed."  4th Decl. of Stephen McConnell, Def.'s Supp. to
Opp., Attach. 2, ¶ 6.

Plaintiff similarly argued that defendant had provided no
declarations describing the search efforts of the NASA Office of
the Chief Information Officer during the third search.  Plaintiff
focuses on this office because it has a searchable database and
inventories of records stored at federal record centers.
Defendant, in response, submitted a supplemental declaration by
Patti Stockman describing those efforts.  *See* 2d Decl. of Patti
Stockman, Def.'s Opp., Attach. 6.  The declaration, however, is
not detailed, and simply states that Stockman conducted a search,
"using broader terms than were used during the May 2003 search,
did so pursuant to instructions in the Roberts Memo, and reported
search results to Margaret Roberts."  *Id.* ¶ 3.

7

In addition to the distributed searches at the NASA
Headquarters and Centers, nineteen boxes of archived information
were sought from the Washington National Record Center, based on
the accession numbers provided by plaintiff.  Three of those
boxes were reported as having been missing for quite some time.
*See* 2d McConnell Decl., ¶¶ 20-22, Ex. 2.  According to NASA, the
remaining sixteen boxes were searched but were found to contain
no responsive documents.  *Id.*  Initially, plaintiff argued that
NASA had provided no documentation regarding any efforts to
locate the missing boxes.  Defendant, however, has provided
supplemental declarations that state that efforts were made to
locate the missing documents.  *See* 2d Stockman Decl. ¶ 3 (stating
that NASA requested search for missing boxes at Records Center);
4th McConnell Decl. ¶ 7 (stating that NASA searched likely places
for missing boxes).

Responsive documents were located by NASA's third search at
the Centers and Headquarters.  These documents are listed in the
Vaughn Index submitted by defendant.  *See* 1st McConnell Decl.,
Def.'s Mot. for Summ. J., Attach. 4, at Ex. 1.  Defendant claimed
that all responsive documents were turned over to plaintiff, with
the exception of two emails withheld pursuant to FOIA Exemption
5, and certain redacted personal information that otherwise would
have been an unwarranted invasion of privacy pursuant to FOIA
Exemption 6.

### D. Fourth Search

In 2006, based on plaintiff's pleadings in this case, NASA undertook a fourth search in an effort to cure any deficiencies in the third search.  In addition, NASA submitted additional declarations describing the prior searches in greater detail.  In its fourth search, NASA reexamined the sixteen Record Center boxes.  This time, responsive documents were found and disclosed to plaintiff.  *See* Def.'s Notice, Mar. 12, 2007.  NASA, however, did not perform further searches at the various NASA Centers, and did not submit declarations with more detail as to how the various NASA Center searches were actually conducted.

## II. Procedural History

Kean filed the instant suit in December 2003.  Defendant moved for summary judgment in May 2004, arguing that the submitted declarations and exhibits demonstrated that its third search for documents was adequate under FOIA, and that its claimed exemptions were proper under FOIA.  Plaintiff opposed the motion, arguing primarily that the documentation of NASA's third search was inadequate to allow the Court to grant defendant summary judgment.  Plaintiff also argued that NASA's admittedly inadequate initial efforts and prior false statements demonstrate that NASA acted in bad faith in responding to her FOIA request.  Finally, plaintiff challenged defendant's withholding of two

emails under FOIA Exemption 5.  Separately, plaintiff moved to strike several of NASA's supporting declarations on the basis that they were not made under penalty of perjury.  Defendant thus re-filed those declarations in order to comply with 28 U.S.C. § 1746.

On March 29, 2005, the Court denied plaintiff's motion to strike the declarations as moot because defendant had re-filed proper declarations.  The Court also directed defendant to file a supplemental reply in order to fully respond to plaintiff's arguments made in her opposition to summary judgment. Accordingly, the Court denied defendant's motion for summary judgment without prejudice to reconsideration after filing of the supplemental reply.

Defendant filed its supplemental reply, which included additional documentation, and the Court informed the parties that it would take defendant's renewed motion for summary judgment under advisement.  Subsequently, plaintiff filed her motion for summary judgment.  Defendant's opposition to this motion included still more declarations by NASA employees.  Both motions are pending before the Court.

## STANDARD OF REVIEW

Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.

10

Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Celotex Corp.*, 477 U.S. at 324.

## ANALYSIS

### I. Sufficiency of NASA's Search

In order to fulfill FOIA's goal of providing public access to government documents, agencies must make more than perfunctory searches and must follow through on obvious leads to discover requested documents.  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999).  "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  *Id.* (quoting *Truitt v. U.S. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir.1990)).  "[T]he agency must show that it made a good faith effort to conduct a search for the

requested records, using methods which can be reasonably expected
to produce the information requested." *Oglesby v. U.S. Dep't of
the Army*, 920 F.2d 57, 68 (D.C. Cir.1990).

The burden of proof is on the government to show that its
search was reasonably calculated to uncover all relevant
documents. *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994).
At the summary judgment stage, the court may rely on "[a]
reasonably detailed affidavit, setting forth the search terms and
the type of search performed, and averring that all files likely
to contain responsive materials (if such records exist) were
searched." *Oglesby*, 920 F.2d at 68.  A declaration is
inadequate, however, "it fails to describe in any detail what
records were searched, by whom, and through what process." *See
Steinberg*, 23 F.3d at 551-52; *see also Oglesby*, 920 F.2d at 68
(holding that a detailed affidavit is necessary "to allow the
district court to determine if the search was adequate in order
to grant summary judgment").  Thus, if a review of the record
raises material doubt, "particularly in view of well defined
requests and positive indications of overlooked materials,
summary judgment is inappropriate." *Valencia-Lucena*, 180 F.3d at
326 (internal quotation marks and citations omitted).  Failure to
conduct an adequate search is "an improper withholding" of
records under FOIA. *Maydak v. DOJ*, 254 F. Supp. 2d. 23, 44
(D.D.C. 2003).

Plaintiff has made numerous arguments about the inadequacy of NASA's searches pursuant to her FOIA request.  Defendant, in turn, has submitted and re-submitted numerous declarations of various NASA employees attempting to further document their search efforts.  Unfortunately, neither party has provided any up-to-date summary or concise presentation of all these declarations and allegations that would allow the Court to easily determine the sufficiency of NASA's search process.  After sorting through this disorganized collection of documentation, the Court concludes that defendant has not met its burden of proving that its search was adequate.

As described above, NASA's third search entailed multiple searches distributed across many offices in NASA Headquarters and the NASA Centers.  Roberts and McConnell initiated this overall search and oversaw the process, but did not participate in or witness the actual searches of records.  *See Meeropol v. Meese*, 790 F.2d 942, 951 (D.C. Cir. 1986) (approving reliance upon an affidavit of agency employee responsible for supervising search, although he necessarily relied upon information provided by staff members who actually performed search).  Rather, they relied on email responses from the various departments to apprise them of the search results, and defendant similarly relies on those emails to document the searches conducted.  Plaintiff challenges the propriety of NASA's search process on several grounds.

13

Plaintiff argues that the overly broad scope of NASA's search
demonstrates that it was random or haphazard and not reasonably
calculated.  Plaintiff also argues that the supervision of
Roberts and McConnell was inadequate.  Regardless of these
issues, however, plaintiff's central argument is that the
submitted descriptions of the searches are inadequate as a matter
of law because they do not sufficiently describe the records
searched, the methodology used, and the search terms employed.

Most of defendant's declarations and descriptions of its
searches are inadequate under FOIA.  For instance, many of the
descriptions do not contain any details regarding which databases
or records were searched, and what methodology or search terms
were used.  *See, e.g.*, Def.'s Supp. Mem., Attach. 2, at 16
(Office of Space Flight reports that it conducted an "extensive"
search and "did not find any records on file at Headquarters
documenting the 11 items asked for in the request"), 22 (Office
of General Counsel checked the box stating "a search was
conducted and no responsive records were located"), 37 (Ames
Research Center reported simply, "no records here at Ames"); 1st
Roberts Decl., Ex. 6C (Glenn Research Center reported that
several offices conducted searches, and that "no records were
found"), Ex. 6F (Johnson Space Center reported that a "'no
records' response was received from all" its offices), Ex. 6H
(Langley Research Center reports same), Ex. 6J ("We find no

records at the Stennis Space Center that would satisfy this request."). In fact, many of the email documents and declarations regarding searches at the NASA Centers contain only a description of which offices in the Center the FOIA requests was forwarded on to, and a summary answer that no responsive records were found. *See, e.g.*, Def.'s Supp. Mem., Attach. 6 (Glenn Research Center); Attach. 10 (Johnson Space Center); Attach. 8 (Goddard Space Center), Attach. 13 (Kennedy Space Center). These documents and declarations are inadequate to satisfy defendant's burden at summary judgment because they fail to "describe in any detail what records were searched, by whom, and through what process." *See Steinberg*, 23 F.3d at 551-52.

The inadequacy of these documents is highlighted by the comprehensive responses from two departments – the Marshall Space Flight Center ("MSFC") and especially the Jet Propulsion Laboratory ("JPL"). The declaration regarding the MSFC described searches for each of the 11 subject areas of the FOIA request, in particular stating which exact databases were searched and what search terms were used. *See* Def.'s Supp. Mem., Attach. 7. The submission from the JPL is even more detailed, describing the searches of numerous databases, microfilm rolls, file folders, and computer files, and further including the search terms used in these searches. *See* 1st Roberts Decl., Ex. 6E. Had all of defendant's submissions been so detailed, defendant may have been

15

able to meet its burden.  Given that most of the submissions are
so vague, however, defendant cannot meet its burden under FOIA of
showing "beyond material doubt" that its search was reasonably
sufficient.  *See Valencia-Lucena*, 180 F.3d at 325.

In addition, plaintiff argues that there is evidence of
specific overlooked documents not found by NASA's search, which
supports her argument that the search was inadequate.
"[P]ositive indications of overlooked materials" do cast doubt on
the adequacy of a FOIA search.  *See Valencia-Lucena*, 180 F.3d at
326.  On the other hand, "mere speculation that as yet uncovered
documents may exist does not undermine" the sufficiency of an
agency's search.  *Safecard Sears v. SEC*, 926 F.2d 1197, 1201
(D.C. Cir. 1991).  Defendant argues that some of plaintiff's
"missing documents" have in fact now been disclosed or
conclusively do not exist.  Plaintiff points to historical
documents that her own independent research discovered, but
defendant responds that the prior existence of such documents
does not prove that NASA still retains such documents.  *See
Maynard v. CIA*, 986 F.2d 547, 559 (1st Cir. 1993) ("the fact that
a document once existed does not mean that it now exists . . .
[nor] that the agency has retained it").

Plaintiff does, however, present two strong arguments about
missing documents.  First, she points to several NASA documents
that refer to the "Cosmos 96" satellite, one of which has been

16

amended since 2000.  *See* Pl.'s Opp. at 49-50.  Plaintiff argues
that it is very likely that NASA has some underlying data
regarding this satellite and that NASA's searches should have
uncovered this data as the FOIA request encompassed information
about the Cosmos 96 satellite.  Given the fact that NASA recently
amended one of these documents, *see* Pl.'s Exs. 10D, 28, it
appears likely that there are responsive documents regarding the
satellite.  *See Friends of Blackwater v. U.S. Dep't of Interior*,
391 F. Supp. 2d 115, 120-21 (D.D.C. 2005) (holding that absence
of drafts of documents was inconceivable, which was proof that
agency search was inadequate).  Second, the fact that the renewed
search of the sixteen Records Center boxes during the fourth
search uncovered responsive documents is evidence that the search
procedures used during the third search were inadequate.
Therefore, because the record as a whole leaves significant doubt
about the adequacy of NASA's searches, and there were well-
defined FOIA requests and positive indications of overlooked
materials, summary judgment for the defendant is inappropriate.
*See Valencia-Lucena*, 180 F.3d at 326.

## II. Validity of NASA's Claimed FOIA Exemptions

FOIA requires that federal agencies release all documents
requested by members of the public unless the information
contained within such documents falls within one of nine
exemptions.  5 U.S.C. § 522(a),(b).  These statutory exemptions

must be narrowly construed in favor of disclosure.  *U.S. Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).  The government bears the burden of justifying the withholding of any requested documents through agency affidavits, an index of withheld documents, or both.  *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991); *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 861 (D.C. Cir. 1980).

Plaintiff challenges defendant's withholding of two emails pursuant to FOIA Exemption 5.  Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5).  This language has been construed to exempt those documents that would not be routinely available to an agency's opponent in a civil discovery context and to incorporate all evidentiary privileges that would be available in that context.  *See Rockwell Int'l Corp. v. DOJ*, 235 F.3d 598, 601 (D.C. Cir. 2001).  In its Vaughn index, defendant describes the emails as, "[t]wo emails between the NASA FOIA Officer and a Senior Attorney W. Bierbower seeking legal advice; these emails were dated [November] 4 and 5, 2003, pertaining to the request to be interviewed [sic] by SciFi."  1st McConnell Decl., Vaughn Index #101.  Defendant asserts that these emails are protected under both the deliberative process privilege and attorney-client privilege.

The deliberative process privilege "protects the decision-making processes of government agencies and encourages the frank discussion of legal and policy issues by ensuring that agencies are not forced to operate in a fishbowl." *Mapother v. DOJ*, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (internal quotation marks omitted). The privilege exempts from disclosure "recommendations, draft documents, proposals, suggestions and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Judicial Watch, Inc. v. DOJ*, 306 F. Supp. 2d 58, 70 (D.D.C. 2004). To satisfy its burden, the agency must demonstrate that the materials it withheld are both predecisional and deliberative. *Mapother*, 3 F.3d at 1537. A document is "predecisional if it was generated before the adoption of an agency policy and deliberative if it reflects the give-and-take of the consultative process." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) (internal quotation marks omitted).

The Court has reviewed *in camera* the emails in question. *See* Order, Feb. 22, 2007. The emails between McConnell and NASA attorney Bierbower concern a letter that McConnell ultimately sent to plaintiff's counsel. The emails were both deliberative and predecisional with regard to this letter, and therefore are covered by the deliberative process privilege.

## CONCLUSION

As defendant has validly withheld the two disputed emails pursuant to FOIA Exemption 5, defendant's motion for summary judgment is **GRANTED in part** with respect to the withholdings. Defendant, however, has failed to demonstrate that its searches for responsive documents were adequate, so its motion for summary judgment is **DENIED in part** with respect to the searches.  Because NASA's searches may have been adequate, and may only suffer from a lack of documentation, this denial is **without prejudice**.  For the same reason, plaintiff's cross-motion for summary judgment is **DENIED without prejudice**.

In order to generate a proper record for the Court of defendant's search for responsive documents, the Court directs the parties to propose search and documentation procedures that will ensure the creation of a proper record.  *See, e.g.*, *Judicial Watch, Inc., v. U.S. Dep't of Commerce*, 337 F. Supp. 2d. 146, 158-59 (D.D.C. 2004) (describing special search and documentation procedures for second search after initial search was found inadequate under FOIA).  The parties are directed to confer and jointly propose search and documentation procedures appropriate for this case.  The parties' joint proposal is due to the Court no later than April 30, 2007.  If the parties cannot agree on a proposal, separate proposals from each party are due to the Court

no later than April 30, 2007.  An appropriate Order accompanies

this Memorandum Opinion.


**Signed:**    **Emmet G. Sullivan**
          **United States District Judge**
          **March 27, 2007**